Filed 5/9/13  P. v. Solis CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JOSE M. SOLIS,<br><br>  Defendant and Appellant. | B236689<br><br>(Los Angeles County<br>Super. Ct. No. VA118486) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael A. Cowell, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jose M. Solis appeals from his conviction of two counts of lewd act upon a child under the age of 14. He contends that the trial court was required to instruct the jury with regard to battery as a lesser included offense. He also contends that Evidence Code section 1108 violates the United States Constitution, and that the trial court erred in admitting propensity evidence. We conclude that defendant's contentions are without merit and affirm the judgment.

## BACKGROUND

**Procedural history**

Defendant was charged with two counts of lewd act upon a child under the age of 14, in violation of Penal Code section 288, subdivision (a).[1] A jury found defendant guilty of both counts as charged, and on October 13, 2011, the trial court sentenced him to a total of six years in prison, comprised of the middle term of six years as to count 1, plus a concurrent term of six years as to count 2. The trial court awarded 291 days of presentence custody credit, imposed mandatory fines and fees, and ordered defendant to submit to HIV testing and provide a DNA sample. Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

Eleven-year-old Emily T. and her older sister Fatima[2] testified regarding the events of December 23, 2010. At approximately 3:00 p.m. when Emily and her two sisters were home alone while their parents were at work, defendant, their maternal uncle came to visit. When defendant arrived dinner was being prepared and cheese was needed. Defendant offered to go to the store and invited Emily to come along. She happily agreed as she was close to defendant, he was like a second father and she trusted him. Defendant and Emily went in defendant's car to the store, although it was just one

---

[1]   All further statutory references are to the Penal Code unless otherwise indicated.

[2]   As Emily's sisters and parents share a last name, we use only their first names to avoid confusion and to protect their privacy. No disrespect is intended.

block away. After defendant bought the cheese, he drove to his house, about two blocks away, rather than return to the girls' house.

Inside the house, defendant took Emily by the arm, placed her on his lap, and told her that if she had the chills, her breasts would grow. He then kissed her multiple times on her neck and blew in her ear. He asked whether she had a boyfriend. Defendant then lifted Emily's shirt and bra, asked how fast her heart was racing, and touched her left breast, rubbing it in a circular motion for a minute or two.

Emily was frightened and felt she could not move. When defendant asked her whether "she liked it" and whether it felt good, she said "no," but he continued to rub her breast. Emily then asked to go to the bathroom and remained there crying for five or six minutes. She came back out because she felt she had no choice. Defendant again took her to the couch, put her on his lap, grabbed her breast under her bra and rubbed it in a circular motion as he had earlier, for a longer period, maybe three minutes. When Emily finally told him to stop and take her home before her father returned, defendant complied.

Fatima noticed that defendant and Emily were away longer than it would normally take to go to the store. As Emily helped Fatima set the table, Fatima noticed that Emily's face was pale and her voice was soft and shaky. Emily tugged at Fatima and said defendant had done something to her. In response Fatima took Emily into the bedroom where Emily told Fatima what defendant had done. They then sat down to dinner, saying nothing to their father about what had happened. Fatima and Emily later told their mother.

Emily's frequent asthma attacks caused her to suffer anxiety for which she saw a therapist. About two weeks after the incident with defendant, Emily and her mother (Hortensia) told Emily's therapist about it, and the therapist notified law enforcement.

Arturo, the girls' father, testified that defendant visited their home almost daily. Arturo remembered that on December 23, 2010, he arrived home from work at 4:45 p.m. and that defendant stayed for dinner. At dinner, defendant and Emily both looked frightened and defendant's face was red. Defendant attributed his heightened color to possible illness, nothing was said about the incident, and dinner conversation was

3

otherwise normal.  About one month earlier, Arturo observed defendant hugging Emily against his body and speaking into her ear in a way that made Arturo uncomfortable. Arturo had noticed that defendant behaved differently with Emily; he was more affectionate with her than with the other girls and was always "after her."  Arturo spoke to his wife about his observation and asked her to tell her brother not to hug Emily in that way, but his wife, though upset, did not believe him.

**Defense evidence**

Emily's therapist, Gloria Cordova, testified that she has been Emily's therapist since August 2010.  When told about what defendant had done, she called law enforcement.

Defendant's niece, Aracely Morales, testified that she had known defendant since she was four years old and that he lived with her family for about two years when she was in high school.  Defendant often visited her family and never behaved inappropriately when she was alone with him.  No other family members ever told her that he acted inappropriately toward them.

Defendant's landlord, Victor Reyes (Reyes), testified that defendant was home installing an outdoor canopy until 3:00 p.m. on December 23, 2010, except for about 10 minutes around 1:00 p.m. when he went to buy beer.  Reyes did not see defendant later that afternoon, because he was working on the other side of the house until 5:00 p.m. Reyes saw defendant's wife come home about 6:30 p.m., and then saw the two of them go to the market.

Defendant's sister, Cecelia Morales, testified that she had left her children alone with defendant on occasion, and they never reported inappropriate behavior.

Defendant's wife, Claudia Solis, testified that they had been married six years, had no children, and defendant had a 15-year-old son who spent weekends and vacations with them.  Defendant often enjoyed spending time with Mrs. Solis's seven nieces and nephews, and was always helpful and playful with them.  When Mrs. Solis arrived home from work at 6:30 p.m. on December 23, 2010, she and defendant went to the market.

4

## I. Battery instruction

Defendant contends that battery is a lesser included offense of committing a lewd or lascivious act upon the body of a child and that the judgment must be reversed because the trial court did not instruct the jury, sua sponte, regarding battery.[3]

"'The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.' [Citations.] 'That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser.' [Citations.]" (*People v. Rogers* (2006) 39 Cal.4th 826, 866; see also *People v. Breverman* (1998) 19 Cal.4th 142, 154.)

Recognizing that there is a split of authority on the question whether battery is a lesser included offense of committing a lewd or lascivious act upon a child, defendant urges us to follow *People v. Thomas* (2007) 146 Cal.App.4th 1278, which held that it is a lesser included offense. Respondent urges us to follow *People v. Santos* (1990) 222 Cal.App.3d 723, which held that it is not a lesser included offense.[4] We need not take sides on the issue as even assuming defendant's position is correct, he has failed to show that the evidence warranted a jury instruction of battery or that defendant was prejudiced by its omission.

Section 288, subdivision (a), is violated by any touching of any part of a child's body if committed with the intent to sexually arouse either the defendant or the child. (*People v. Martinez* (1995) 11 Cal.4th 434, 442.) Battery under section 242 is any harmful or offensive touching and requires no intent other than to touch. (*People v. Lara*

---

[3]     The trial court gave counsel the opportunity to request instructions on lesser included offenses, if any, but there were no requests.

[4]     The issue is presently before the California Supreme Court in *People v. Gray* (2011) 199 Cal.App.4th 167, review granted December 14, 2011, S197749, and *People v. Shockley* (2010) 190 Cal.App.4th 896, review granted March 16, 2011, S189462.

(1996) 44 Cal.App.4th 102, 107.) Defendant contends that there was sufficient evidence from which the jury could find that there was no intent to sexually arouse either defendant or the child, and thus the offensive touching was merely battery. He argues that because Emily suffered from severe asthma and had an "anxiety disorder," and because he asked her whether her heart was racing before touching her "breast area," the jury could have found that he was merely concerned for her health and attempting to comfort her.

At most, defendant's argument demonstrates that anyone who knew Emily would be concerned about her health; but the evidence fails to suggest that defendant had any intent to comfort her at that particular moment. The mere possibility that a jury might find that a defendant harbored a certain mental state, without direct or circumstantial evidence to support such a finding, is insufficient to warrant an instruction. (*People v. Sakarias* (2000) 22 Cal.4th 596, 620.) "Speculation is an insufficient basis upon which to require the trial court to give an instruction on a lesser included offense." (*People v. Wilson* (1992) 3 Cal.4th 926, 942.)

There was no direct or circumstantial evidence that defendant touched Emily in any nonsexual comforting manner. There was no evidence that Emily had an anxiety disorder or evidence defining such a condition; there was no evidence to suggest that Emily was having an asthma or anxiety attack or even that her heart was racing during the incident; and there was no evidence that defendant merely touched the area near her breast. Moreover, had Emily shown signs of an asthma or anxiety attack, defendant would have no reason to take her to his house, as the store was closer to Emily's home than his. Finally, had defendant intended only to comfort Emily, he would have had no reason to place his hand under her shirt and bra to determine whether her heart was racing; nor would he have had any reason to kiss her neck, blow into her ear, tell her about the effect of cold on breasts, or ask her about boyfriends. Touching a child in this manner provides ample evidence of the requisite intent under section 288, subdivision (a). (See *People v. Martinez*, *supra*, 11 Cal.4th at pp. 444, 447.) Defendant does not argue otherwise and points to no evidence that he touched Emily in some other manner.

6

Rather, the defense theory was that defendant was home all day and evening December 23, 2010, and that the events were fabricated.

We conclude that the trial court did not err in omitting a battery instruction; however, assuming that the trial court was required to give a battery instruction, the evidence of Emily's frequent illness and defendant's speculative argument fail to show a reasonable probability that its absence contributed to the verdict or even a reasonable doubt whether it did so. Any error was thus harmless under the standard of either *People v. Watson* (1956) 46 Cal.2d 818, 836, or *Chapman v. California* (1967) 386 U.S. 18, 24.

## II. Evidence Code section 1108

Defendant contends that the trial court erred in admitting Arturo's testimony regarding the prior hugging incident, and that the error resulted in a denial of his federal constitutional rights to due process and equal protection. He first contends that Evidence Code section 1108 is unconstitutional on its face. Defendant acknowledges that the California Supreme Court rejected such a challenge in *People v. Falsetta* (1999) 21 Cal.4th 903, 913-922 (*Falsetta*), and he concedes that we are bound by that holding. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) He nevertheless asks that we find that *Falsetta* was wrongly decided. We decline to do so and accordingly reject defendant's argument that Evidence Code section 1108 on its face violates due process.

Defendant next contends that Evidence Code section 1108 was unconstitutional as applied to him. Respondent correctly points out that because defendant did not raise a constitutional claim below, he has forfeited his challenge on appeal. A challenge to the admissibility of evidence is generally not cognizable on appeal in the absence of a specific and timely objection in the trial court on the ground urged on appeal. (Evid. Code, § 353.) An objection on one ground does not preserve a challenge based upon a different ground, including the claim that the admission of certain evidence violated the defendant's right to due process under the federal constitution. (*People v. Partida* (2005) 37 Cal.4th 428, 434-435 (*Partida*).) "A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*Id*. at p. 435.)

7

On the other hand, the objection made in the trial court may be sufficient to preserve a federal due process claim where the due process claim is merely "an additional legal consequence of the asserted [state] error . . . ." (*Partida*, *supra*, 37 Cal.4th at p. 438.) Thus, defendant's due process claim is cognizable on appeal only if and when he demonstrates that the trial court erred in admitting the evidence over the proper objection actually made below. (*People v. Thornton* (2007) 41 Cal.4th 391, 443-444; *Partida*, *supra*, at pp. 438-439.)

Because we conclude in the next section that the trial court did not abuse its discretion in admitting Arturo's testimony, and defendant has not demonstrated error under state law, we also conclude that his federal due process claim must also fail. (See *People v. Thornton*, *supra*, 41 Cal.4th at pp. 443-444; *Partida*, *supra*, 37 Cal.4th at pp. 438-439.)

**III. Evidence Code section 352**

Defendant contends that the trial court abused its discretion under Evidence Code section 352 in admitting Arturo's testimony regarding his observation of defendant inappropriately hugging Emily. Prior to jury selection, when the trial court heard all motions in limine, defendant objected to the proposed testimony as prejudicial propensity evidence, vague as to when the incident occurred, and a "distraction." The prosecutor successfully argued that the testimony was admissible to show intent[5] and that it was admissible under Evidence Code section 1108.

"We apply the deferential abuse of discretion standard when reviewing a trial court's ruling under Evidence Code section 352. [Citation.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) Under that standard, the trial court's "discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) It is the appellant's burden to demonstrate that the trial court's decision was irrational, arbitrary, or not

---

[5]    See Evidence Code section 1101, subdivision (b).

"'grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' [Citation.]" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.)

Evidence Code section 352 allows the trial court, in its discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Defendant does not make clear which of these grounds justified excluding Arturo's testimony at the time of the trial court's ruling. He does note that later, at the jury instruction conference, the trial court made the comment that Arturo's testimony was "slight" evidence of a prior sexual offense, but sufficient to justify instructing the jury with CALJIC No. 2.50.01.[6] In essence, defendant contends that in hindsight, Arturo's testimony had little probative value and prejudiced defendant by showing that he had a propensity to commit acts of sexual misconduct against Emily.

In evaluating whether the trial court abused its discretion, "[w]e review the correctness of the trial court's ruling at the time it was made, . . . and not by reference to evidence produced at a later date. [Citations.]" (*People v. Welch* (1999) 20 Cal.4th 701, 739; see also *People v. Hardy* (1992) 2 Cal.4th 86, 167.) And we review only those issues properly raised in the trial court. (Evid. Code § 353; *People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1014.) During the hearing on the motions on in limine, defense counsel did not invoke Evidence Code section 352, nor did he claim that Arturo's testimony would cause undue prejudice or that the potential prejudice would outweigh its probative value. He stated: I would object . . . as it would be prejudicial . . . to the jury. I don't know when that happened. It's vague . . . it's going to be prejudicial. We are focused on this one act. I know they are trying to say there's a pattern here. My client has a propensity for this, but he doesn't. And he has no record. I think it's going to be a

---

**6**    CALJIC No. 2.50.01 instructs that a prior sexual offense, if found to be true by a preponderance of the evidence, is one fact the jury may consider, along with the remaining evidence, to infer guilt.

distraction, your Honor." Had defendant's objection been sufficient to require the trial court to weigh the probative value of the testimony against its probable prejudicial effect, we would nevertheless find no abuse of discretion.

Defendant contends that Arturo's testimony was not probative of his propensity to commit sex crimes, as defendant was never charged with a crime due to his hugging Emily. We disagree. Given the defense theory that Emily was not credible, that Hortensia and Fatima did not believe her, that they needed confirmation from the therapist, and that the incident never happened, Arturo's observations were important corroboration of Emily's account by showing defendant's propensity to behave in a sexual manner toward her.

In any event, the prosecutor offered the testimony both as propensity evidence, and as evidence of intent, which is an essential element of section 288, subdivision (a). (See *People v. Martinez, supra*, 11 Cal.4th at p. 442.) Defendant has extensively argued that the evidence suggested an innocent intent to comfort an ill and anxious child. Thus, as respondent notes and as defendant's arguments regarding battery demonstrate, defendant's intent was an important issue. However, defendant makes no claim that the evidence was insufficiently probative of intent.

Indeed, defendant has not demonstrated or even argued that the potential for undue prejudice outweighed the probative value of Arturo's testimony. He merely argues (again, in hindsight) that the evidence was inflammatory and allowed the jury to disregard his "strong" alibi defense. It is unlikely that Arturo's testimony caused the jury to reject defendant's alibi claim, particularly since defendant's landlord admitted he was unable to see defendant between 3:00 p.m. and the time his wife arrived home at 6:30 p.m. However, if Arturo's testimony did have the effect of countering defendant's alibi defense, we see nothing improper in its use for that purpose. Evidence Code section 352 is not designed to exclude evidence simply because it might damage the defense. (See *People v. Scott* (2011) 52 Cal.4th 452, 490-491; *People v. Karis* (1988) 46 Cal.3d 612, 638.) This sort of prejudice is inherent in all propensity evidence and does not render it inadmissible. (See *People v. Soto* (1998) 64 Cal.App.4th 966, 992.)

Defendant's arguments also fail to demonstrate that the admission of Arturo's testimony resulted in a miscarriage of justice. Under the test of *People v. Watson*, "[t]he reviewing court must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error. [Citations.]" (*Partida*, *supra*, 37 Cal.4th at p. 439; see Evid. Code, § 353; Cal. Const., art. VI, § 13.) Defendant contends that Arturo's testimony materially contributed to the verdict; however, he paradoxically argues that the evidence was too "slight" to prove defendant's propensity to engage in sexual misconduct, and that other evidence demonstrated that Arturo may have overreacted to what was really an innocent hug.[7] In essence, defendant contends that weak, easily contradicted testimony "unfairly tipped the scales against him." Rather, Arturo's testimony could not have had much effect on the outcome.

There was no reasonable likelihood of a better outcome for defendant without Arturo's observations. As respondent demonstrates, Emily's description of defendant's erotic behavior provided overwhelming evidence of an intent to arouse himself or the child: kissing her neck; blowing in her ear; rubbing her breast under her bra; telling her that the chills would make her breasts grow; asking whether she had a boyfriend; and asking whether she liked what he was doing. Emily's account was corroborated by the testimony of Fatima and Arturo regarding their observations of the demeanors and behavior of Emily and defendant after they returned from the store and during dinner.

We also agree with respondent that the trial court's instructions limiting the use of the evidence dispelled any prejudice. Included in the charge were CALJIC Nos. 2.20, 2.24, 2.50.01, 2.50.2, and 2.81. These instructions informed the jury how to evaluate the credibility of witnesses and determine the weight to give their testimony, what inferences may be drawn from character evidence, and how to evaluate evidence of a prior sexual offense. The trial court "cautioned and reminded" the jury that it must not consider

---

[7] Defendant argues that Arturo was "a harsh man who ruled his family with an iron fist. He relies in part on Hortensia's two-week delay in telling Arturo about the incident due to fear of how he might react, and in part on Arturo's arrest for domestic violence after slapping his wife during an argument. The evidence of Arturo's arrest and the precipitating events were excluded by the trial court.

evidence of a prior sexual offense unless it found by a preponderance of the evidence that defendant committed it, and the court further instructed "[B]efore a defendant can be found guilty of any crime charged in this trial the evidence as a whole must persuade you beyond a reasonable doubt that the defendant is guilty of that crime." The trial court also instructed the jury with CALJIC No. 2.90 regarding the presumption of innocence and the prosecution's burden to prove guilt beyond a reasonable doubt. We presume the jurors were capable of understanding and applying the court's instructions, and that they followed them. (*People v. Gonzales* (2011) 51 Cal.4th 894, 940.)

In sum, defendant has failed to demonstrate that the trial court acted arbitrarily or capriciously, that the ruling was not grounded in reasoned judgment or guided by appropriate legal principles, or that the ruling resulted in a miscarriage of justice. (See *People v. Superior Court (Alvarez)*, *supra*, 14 Cal.4th at p. 977; *People v. Jordan*, *supra*, 42 Cal.3d at p. 316.) We conclude that the trial court did not abuse its discretion in admitting Arturo's testimony.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.*
FERNS

_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.